UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JANA A.,<br><br>                Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Case No. C19-5722 MLP<br><br>ORDER |

## I.     INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred at steps two, three, and five of his decision, and in assessing her residual functional capacity ("RFC") and the medical opinion evidence. (Dkt. # 14 at 2.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II.     BACKGROUND

Plaintiff was born in 1970, has a high school diploma and some college education, and has worked as a military contractor overseas; in retail, human resources, and scheduling jobs at

ORDER - 1

Home Depot; and as a cashier. AR at 24, 43-67. Plaintiff was last gainfully employed in August 2015. *Id*. at 321.

In May 2016, Plaintiff applied for benefits, alleging disability as of August 23, 2015. AR at 265-72. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id*. at 171-79, 182-96. After the ALJ conducted a hearing on March 6, 2018 (*id*. at 34-108), the ALJ issued a decision finding Plaintiff not disabled. *Id*. at 15-26.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

Step two: Plaintiff's lumbar spine degenerative disc disease, generalized anxiety disorder, major depressive disorder, obesity, and post-traumatic stress disorder are severe impairments.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

RFC: Plaintiff can perform sedentary work with additional limitations: she can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. She can occasionally perform other postural activites such as balancing, stooping, kneeling, crouching, and crawling. She can have occasional use of foot controls bilaterally, and can have occasional exposure to vibration and extreme cold. She can understand, remember, and apply detailed, but not complex, instructions. She cannot work in a fast-paced, production-type environment.

Step four: Plaintiff cannot perform past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 15-26.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court.

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

# IV. DISCUSSION

## A. The ALJ Did Not Err at Step Two

The ALJ noted that although Bonnie Anderson, PA-C, had diagnosed Plaintiff with fibromyalgia, Ms. Anderson was not an acceptable medical source and thus the ALJ did not include this condition in the list of Plaintiff's severe medically determinable impairments at step two. *See* AR at 18. Under the regulations, a medically determinable impairment must be diagnosed by an acceptable medical source. *See* 20 C.F.R. §§ 404.1521, 416.921.

Plaintiff contends that the ALJ failed to recognize that Ms. Anderson's fibromyalgia diagnosis was affirmed by an acceptable medical source, Shawn Andrews, MD, and therefore the ALJ should have included it at step two. (Dkt. # 14 at 12 (citing AR at 925-26).) But the treatment notes cited by Plaintiff do not include a fibromyalgia diagnosis. AR at 925-26. Rather, Ms. Anderson only noted "fibro type pain." (*Id.* at 925. Ms. Anderson does mention chronic pain syndrome, and references Plaintiff's lower back pain, which is consistent with the ALJ's finding that Plaintiff's lumbar spine degenerative disc disease is a severe impairment. *Id*. at 18, 925. Moreover, Plaintiff has not pointed to any functional limitations that were omitted as a result of the ALJ's failure to account for either fibromyalgia or chronic pain syndrome. Thus, Plaintiff has not shown that the ALJ harmfully erred in failing to include fibromyalgia as a medically determinable impairment at step two. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("[S]tep two was decided in [claimant's] favor after both hearings. He could not possibly have been prejudiced. Any alleged error is therefore harmless and cannot be the basis for a remand.").

## B. The ALJ Did Not Err at Step Three

Plaintiff contends that her mental disorders satisfy Listings 12.04, 12.06, and 12.15, which include three paragraphs each: A, B, and C. (Dkt. # 13 at 5.) In order to satisfy Listings

12.04, 12.06, or 12.15, a claimant must satisfy either paragraphs A and B or paragraphs A and C. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A(2). In this case, the ALJ found that Plaintiff did not satisfy a listing for her mental impairments because she did not satisfy the "paragraph B" criteria, given that none of her functional limitations were found to be marked or extreme. AR at 19. Plaintiff contends that the ALJ should have found that her limitations in her ability to interact with others should have been rated "extreme," rather than "mild."

At step three, the ALJ explained why he found Plaintiff's social limitations to be mild:

> The claimant testified that after she left her job, she felt like she could not deal with people. However, she then went on to work at a gas station. When questioned about how she was able to deal with people at the gas station, she stated that she did not want to, but she did it because she had to for her job. This shows that the claimant does have an ability to interact with others when needed for a job. The claimant also indicated that she keeps in touch with friends occasionally and keeps contact with her family in Georgia about twice a month ([AR at 426]). She has a stable relationship with her fiancé, which she has maintained throughout the period at issue. She likes getting out and going to yard sales ([*id*. at 698]). She has reported going to Bingo once a month ([*id*. at 286]). She indicated that her friends do most of her shopping due to not being able to walk for a long time ([*id*. at 285]).

AR at 19. Plaintiff argues that the activities cited by the ALJ do not show that she can interact with the public in a work setting on a sustained basis.

In disputing the ALJ's interpretation of the evidence, Plaintiff relies on her reports of problems grocery shopping or being at the mall, as evidence that her social limitations are more severe than "mild." (Dkt. # 14 at 9 (citing AR at 86, 1080, 1088).) Plaintiff also argues that her ability to interact with her significant other and her family is irrelevant, and that her yard sale shopping and Bingo did not necessarily involve much social interaction. (*Id.* at 11.) Plaintiff also contends that the ALJ erred in relying on her ability to interact in her gas station job, given that she worked at that job prior to her alleged onset of disability. (*Id.* at 9.)

ORDER - 5

Plaintiff worked at the gas station in the months leading up to her alleged disability onset, which is admittedly not during the adjudicated period, but Plaintiff testified that she left the gas station job due to her physical issues rather than because of her ability to interact with people. AR at 66-67, 75-76. Thus, Plaintiff's demonstrated ability to interact with people in this job is relevant to her ability to interact with people during the adjudicated period, given that there is no evidence that Plaintiff's social abilities diminished at the time of her alleged onset. The ALJ reasonably presumed that Plaintiff continued to be able to interact to the degree she had been able to interact before her alleged onset date. Although Plaintiff claims in her reply brief that her "conditions deteriorated as she was increasingly unable to maintain work" (dkt. # 16 at 3), she cites no objective evidence supporting a contention that her social limitations became more severe during the adjudicated period. As discussed *infra*, the ALJ discounted Plaintiff's self-reports and thus any reference to her own statements of worsening social limitations is unavailing here.

Moreover, to the extent that Plaintiff points to evidence that purportedly conflicts with the ALJ's finding of "mild" social limitations: the Court declines Plaintiff's invitation to reweigh the evidence in a manner more favorable to Plaintiff. To the extent that the record contains conflicts regarding the extent of Plaintiff's social capabilities, it is the ALJ who is tasked with resolving those conflicts and Plaintiff has not shown that the ALJ's step-three findings are unsupported by substantial evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[W]e leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."). Plaintiff has not shown that the ALJ's finding that the record supported a finding of "mild" social limitations was unreasonable, and Plaintiff has therefore failed to establish error in the step-three findings.

**C.  The ALJ Did Not Err in Assessing the Medical Opinion Evidence**

Kimberly Wheeler, Ph.D., performed psychological evaluations of Plaintiff in 2016 and 2018 and completed DSHS form opinions describing her symptoms and limitations. AR at 425-29, 1087-91. The ALJ summarized Dr. Wheeler's findings and gave them little weight, finding the 2016 conclusions to be inconsistent with the "generally intact" mental status examination. *Id*. at 23. The ALJ discounted the 2018 conclusions as inconsistent with the mental status examination, which was mostly within normal limits, and because Dr. Wheeler's opinion was based largely on Plaintiff's non-credible subjective reports. *Id*.

Plaintiff argues that an examining psychologist must rely on a claimant's subjective reports in evaluating his or her complaints. (Dkt. # 14 at 13.) That may be true, but that is why an ALJ's evaluation of the reliability of Plaintiff's allegations is so crucial in a case involving psychological impairments. Here, the ALJ explained that he discounted Plaintiff's subjective reports because she had limited treatment for her physical and mental issues, and because her activities of daily living were inconsistent with the allegations. AR at 21-22. Plaintiff does not assign error to the ALJ's assessment of her subjective reporting (dkt. # 14 at 2), which is fatal to her argument here because Dr. Wheeler's opinion report repeatedly quotes Plaintiff's subjective reporting. *See, e.g.*, AR at 1088 ("clinical findings" section consisting of self-report). Given that the ALJ discounted Plaintiff's subjective reporting, which Plaintiff does not challenge, the ALJ was entitled to discount Dr. Wheeler's opinion based on her reliance on Plaintiff's self-reporting. *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("As the district court noted, however, the treating physician's prescribed work restrictions were based on Bray's subjective characterization of her symptoms. As the ALJ determined that Bray's description of

her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements.").

Plaintiff goes on to suggest that the mental status examinations bear no relevance to Dr. Wheeler's conclusions, and thus the ALJ erred in discounting Dr. Wheeler's opinions based on purported inconsistency between them. (Dkt. # 14 at 13.) This argument is not persuasive, because the mental status examinations addressed, for example, Plaintiff's memory and concentration abilities, which are relevant to Plaintiff's ability to remember instructions. *See* AR at 427, 429, 1089, 1091. Dr. Wheeler found Plaintiff's memory and concentration to be intact, and yet found Plaintiff to be moderately limited in her ability to understand, remember, and persist in tasks by following detailed instructions. *Id.* The ALJ did not err in finding these aspects of Dr. Wheeler's opinions to be inconsistent, or in discounting them on that basis. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (ALJ appropriately considers internal inconsistencies within and between physicians' reports).

### C. The ALJ Did Not Err in Assessing Plaintiff's RFC

Plaintiff argues that the ALJ erred in finding certain mild and moderate limitations in the "paragraph B" criteria at step three, and yet failing to account for those limitations in the RFC assessment. (Dkt. # 14 at 13-14.) This argument rests on a misapprehension of the difference between the step-three inquiry and the RFC assessment: at step three, the ALJ considers the severity of the medically determinable impairments, while the RFC is formulated to define the most the claimant can do despite the limitations caused by his or her impairments. *See* Social Security Ruling 96-8p, 1996 WL 374184, at *4 (Jul. 2, 1996) ("The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the

sequential evaluation process."); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (RFC "is the most you can still do despite your limitations").

Plaintiff goes on to posit that various limitations should have been included in the ALJ's RFC assessment, but cites no credited evidence establishing the existence of those limitations. (Dkt. # 14 at 14-16.) To the extent that Plaintiff relies on Dr. Wheeler's opinions to establish those limitations, as explained *supra*, the ALJ properly discounted Dr. Wheeler's opinions, and thus Plaintiff does not show error in the ALJ's decision by pointing to Dr. Wheeler's discredited opinions.

### D. The ALJ Erred at Step Five

Plaintiff challenges the ALJ's reliance on the specific jobs identified at the hearing by the vocational expert ("VE") in reaching the step-five determination, specifically jobs requiring level-three reasoning, which Plaintiff argues exceeds her RFC. (Dkt. # 14 at 17.)

The ALJ's RFC assessment limits Plaintiff to performing "detailed, but not complex, instructions." AR at 20. A job with level-three reasoning requires a person to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." Dictionary of Occupational Titles ("DOT"), App. C. The DOT's reference to multiple variables suggests a degree of complexity beyond that contemplated in the RFC assessment. Indeed, many district courts in the Ninth Circuit have explicitly found an RFC restriction similar to Plaintiff's to be incompatible with level-three reasoning, although the Ninth Circuit itself has not ruled on this issue. *See Pugh v. Comm'r of Social Sec.*, 2019 WL 3936192, at *5 (E.D. Cal. Aug. 20, 2019) (collecting cases).

The *Pugh* court did acknowledge a case from this district finding that a limitation to simple and detailed tasks was compatible with level-three reasoning, but *Pugh* found its reasoning unpersuasive. 2019 WL 3936192, at *5 (citing *Hockett v. Colvin*, 2017 WL 218801, at *2 (W.D. Wash. Jan. 19, 2017)). The Court also finds *Hockett*'s reasoning to be unpersuasive here, because Plaintiff's RFC explicitly restricted her from complex instructions, where as the claimant in *Hockett* was found to be able to perform simple and detailed tasks, without any specific limitation as to complexity. *See* 2017 WL 218801, at *1. It is the ALJ's explicit finding that Plaintiff could not carry out complex instructions that suggests a conflict with level-three reasoning here.

The Commissioner contends that *Meissl v. Barnhart* supports affirming the ALJ's decision (dkt. # 15 at 12-13), but *Meissl* is inapposite. In *Meissl*, the claimant was restricted to performing simple tasks at a routine or repetitive pace, and the court found that restriction to be compatible with level-two reasoning. 403 F.Supp.2d 981, 983-84 (C.D. Cal. 2005). The RFC restrictions in this case are distinguishable from those in *Meissl*, and the issue presented here is whether the RFC restrictions are consistent with level-*three* reasoning. Thus, *Meissl* does not resolve the issue presented to this Court.

Under these circumstances, the Court finds that there is an apparent conflict between the ALJ's RFC assessment and the DOT definitions of most[3] of the jobs relied upon at step five, and the ALJ erred in failing to address this conflict at the hearing or in the decision. *See also Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("We merely hold that in order for an ALJ to rely

---

[3] *See* DOT 249.587-018, 1991 WL 672349 (Jan. 1, 2016) (document preparer); DOT 299.357-014, 1991 Wl 672624 (Jan. 1, 2016) (telephone solicitor); DOT 237.367-010, 1991 WL 672185 (appointment clerk); DOT 379.367-010, 1991 WL 673244 (Jan. 1, 2016) (surveillance system monitor). The ALJ did rely on one job requiring level-two reasoning, but this job does not exist in significant numbers in the national economy that Plaintiff can perform. *See* AR at 26 (discussing the addresser job). Thus, the error with respect to the jobs requiring level-three reasoning is not harmless.

ORDER - 10

on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation.").

### V.     CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reconsider the step-five findings and obtain additional VE testimony if needed, and revisit any other parts of the decision as necessary.

Dated this 26th day of February, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge